JOHN C. NICHOLS, APPELLANT, *v.* ANDREW G. WHITE, RESPONDENT, IMPLEADED, ETC.

*Evidence — what admissible to rebut the presumption of partnership arising from the use of a firm name— declarations of a partner made after a dissolution to prove that fact — memoranda of estimates made by a witness at a former time — when he may use them to refresh his recollection.*

This action was brought by the plaintiff upon three promissory notes, signed by "Lawrence Brewing Co., S. A. Jewett, Atty.," against the defendants White and W. H. Nichols, who were claimed to be liable on the notes as partners engaged in carrying on business under the name of Lawrence Brewing Company. The defendant White, who alone defended, set up, among other defenses, that the partnership, which was admitted to have existed for a time, had been dissolved to the knowledge of the plaintiff before these notes were signed, and that they were not made in the partnership business.

The defendant Nichols was called as a witness by White and testified that he was at one time one of the firm of the Lawrence Brewing Company; that Charles H. Nichols, a brother of the plaintiff, was also at one time a member thereof, and that prior to the connection of the witness with the firm its business was carried on in the name of the Lawrence Brewing Company. The witness was then allowed, against the objection and exception of the plaintiff, to testify that he purchased the interest in the firm, standing in the name of Charles H. Nichols, from the plaintiff, and that the plaintiff at that time asserted that he was the owner of such interest.

*Held,* that it was not error to admit this testimony; that it was competent as showing facts from which it would appear that the words "Lawrence Brewing Co., S. A. Jewett, Atty.," were nothing more than a trade-mark used by different persons as they succeeded to certain business interests in Lawrence, and that the plaintiff had notice of this fact.

The court refused to allow the plaintiff's counsel to ask the witness, Nichols, the question: "Did Mr. White or Mr. Newcomb, in behalf of Mr. White, keep the promise to you of letting you have money as mentioned in these letters?" but stated that he might answer what they did in regard to it.

*Held*, no error, as the question improperly called for a general summary or opinion of the witness, while the court permitted the witness to state just what had been done.

To sustain the claim that the partnership had been dissolved evidence was given tending to show a sale of White's interest in the firm to Nichols, and the latter testified that he had spoken of the sale to one King, who was employed by White to look after White's interests in the firm, and that King had thereupon taken away his books and papers and left the office. He also testified that after the dissolution he carried on business under the old name; that he told Jewett, who had a power of attorney from the firm, of the dissolution and appointed him his attorney, telling him that he would give him a new power of attorney; that all checks and notes were thereafter signed by Jewett in the old name.

*Held*, that the declarations of Nichols were admissible, as against the plaintiff, as bearing upon the question as to whether, in the understanding and belief of the parties, there had been a dissolution of the partnership, and whether it had been effectually carried out.

*The Aylesford Peerage case* (11 App. Cases, 1) followed.

Declarations are sometimes quite as much " conduct " as anything else.

The defendant White claimed that the notes had been paid by coal assigned to the plaintiff by the defendant Nichols as collateral security, which had been sold for at least the amount of the notes and the proceeds received by the plaintiff. To show the amount of coal received by the plaintiff, of which no accurate measurements had been made, a witness was called by the defendant, who testified that he saw the coal in bins and that he made correct estimates of the several amounts stated, and that at the time when he made such estimates he made correct memoranda as to the quantities estimated; that he was accustomed to estimate coal, and familiar with that kind of work. In his opinion the estimates were substantially correct. That his recollection of the amount of coal on the wharf (fourteen or fifteen years before) was guided by the books and papers; that he knew the coal was there; that after refreshing his recollection by looking at the paper he could state his estimate of the quantity of coal on the wharf, but could not remember it without looking at the paper; that after looking at the paper he could remember the estimate so as to state it. He was then allowed to state that, according to his best judgment and opinion, the number of tons on the wharf was 1,886.

*Held*, no error.

*Halsey* v. *Sinsebaugh* (15 N. Y., 485) followed.

Appeal from a judgment, entered upon a verdict rendered at the Albany Circuit for the defendant White, the only party who defended, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought upon three promissory notes, amounting in all to $5,000, signed by the " Lawrence Brewing Co., S. A. Jewett, Atty." The plaintiff proved a partnership between defend-

ant White and Wm. H. Nichols, by articles of partnership dated March 4, 1871, under the name above given; also, a power of attorney, signed by White & Nichols, to Sidney A. Jewett, which authorized the attorney to sign notes, etc. The notes were then put in evidence and the interest cast upon them, and the plaintiff rested. The defenses set up in defendant White's answer were three in number: First. That the partnership was dissolved to the knowledge of plaintiff before these notes were signed. Second. That they were not made in the partnership business. Third. That they had been paid by coal assigned to plaintiff by defendant Nichols as collateral security for their payment, which coal had been sold for at least the amount of the notes, and the proceeds of such sale had been received by the plaintiff.

*Isaac Lawson*, for the appellant.

*N. C. Moak*, for White, respondent.

PECKHAM, J.:

After the plaintiff had made out a *prima facie* case against defendant White, the defendant William H. Nichols was called by White as a witness. Nichols was indorser on the notes and procured the plaintiff to purchase them. The defendant's counsel proved by this witness that he was at one time one of the firm of the Lawrence Brewing Company, doing business in the city of Lawrence, Mass.; that Charles H. Nichols was also at one time a member thereof; that he was a brother of the plaintiff and the witness was their nephew. Prior to the connection of witness with the firm, business was carried on in the name of the Lawrence Brewing Company. The court then permitted the defendant to prove by this witness, under plaintiff's objection and exception, that he, the witness, purchased of John C. Nichols, the plaintiff, the interest in the firm doing business as the Lawrence Brewing Company, standing in the name of Charles H. Nichols, and that the plaintiff at that time asserted that he was the owner of the interest which stood in the name of Charles H. Nichols. The evidence does not seem to be very important, but is yet, I think, competent.

The notes were signed "Lawrence Brewing Co., S. A. Jewett, Atty." In order to show that no presumption of the existence of

a partnership at the dates of these notes in suit, between White and William H. Nichols, was necessarily to be indulged in by plaintiff because the words "Lawrence Brewing Co., S. A. Jewett, Atty," appeared at the foot of each note, it was competent to show facts from which it would appear that those words were nothing more than a trade-mark, used by different persons as they succeeded to certain business interests in Lawrence, of a brewing nature, and that plaintiff knew it, as he had himself negotiated the sale to the witness of his brother's interest in the concern, which used this name, and that at such time he claimed he was himself the owner of that interest. There was no error committed in allowing defendant Nichols to answer the question "was the relation between you and Andrew G. White & Co. at any time severed?" If that were the full history of the matter, it might be that the plaintiff's exception would have been well taken. It is evident, however, that the question was not put to obtain the opinion of the witness as to the effect of certain facts not stated, but was put in the light of a question to direct the attention of the witness to the subject-matter upon which he was to be interrogated, for as soon as he answered affirmatively, the defendant's counsel directed him to go on and detail how the relations between him and White were severed and what he, the witness, did in relation thereto. That called for the facts and the witness proceeded at once to give all of them. It was nothing more, as the result showed, than asking the witness to state whether anything had ever occurred to sever the relations between him and White, and if so, to state what it was in detail. In this there was no error.

The court was right in refusing to allow the plaintiff's counsel to put the question to the witness, Nichols, "did Mr. White or Mr. Newcomb, on behalf of Mr. White, keep the promises to you of letting you have money as mentioned in those letters?" While denying to plaintiff's counsel the right to put such a question, the court stated that he might answer what they did in regard to it. The first question called for a general summary or opinion of the witness as to whether White had done as he agreed, while the court permitted the witness to state just what he had done.

The evidence admitted for the purpose of sustaining or attempting to sustain the fact of a dissolution of the partnership between Nichols

and White, was all of it perfectly competent. Letters had already been put in evidence showing an offer to sell out on the part of one partner, and what was claimed to be an acceptance on the part of the other, the acceptance being dated October 14, 1871. The evidence also showed that a Mr. King had been made the agent of White to take charge of his interest in the brewery from the commencement of the partnership to October fourteenth. Nichols informed King of the contents of the letter of October fourteenth.

The witness, Nichols, then stated that after this letter Mr. King left, took his books and papers with him out of the office and the witness continued to do business by himself, and Mr. Jewett was appointed his attorney and he continued business under name of Lawrence Brewing Company, and all checks and notes were signed by Jewett, and after the fourteenth October, Nichols told Jewett the partnership was dissolved and he would give him the power of attorney. All this evidence was competent for the purpose of showing acts and declarations of either partner, after the alleged dissolution, as bearing upon the question as to whether in the understanding and belief of the parties there had been one or not, and whether it had been effectually carried out. The declaration of one partner, in the absence of another and as against such other, cannot, of course, in and of itself, prove a dissolution. The declaration here was not offered alone for such a purpose, but it was competent to show as a fact that after this October fourteenth Nichols did business alone; that he said he would give another power of attorney, and stated to Jewett that the partnership was dissolved. That declaration did not, of course, dissolve it, but when the claim was made on the part of White that the partnership was dissolved on the fourteenth October, the acts and declarations of Nichols subsequent to that date were competent evidence as bearing upon the fact of dissolution, and his understanding of it, to be taken for what they were worth, not as I say, as direct evidence of dissolution, but as part of the evidence of the understanding and action of Nichols with regard to that fact. Declarations are sometimes quite as much "conduct" as anything else, and these declarations of Nichols are competent to show he was carrying out and acting upon the agreement of dissolution, and not that the declarations were true, and were, as declarations, evidence against the plaintiff.

In a late case in the House of Lords (*The Aylesford Peerage case*, reported in 11 App. Cases, 1) it was held that the declarations of the mother of a child claimed to be a bastard, although born in wedlock, by which the mother stated the child was a bastard, were admissible as evidence of the conduct of the mother, although she could not be allowed to make such statements in the witness box. I think the evidence offered was plainly admissible on the principles I have stated.

In order to prove the defense of payment of these notes by the sale of coal, the proceeds of which the plaintiff was charged to have received, it became important to show the amount of the coal of which the plaintiff had received the proceeds. There had been no accurate measurements made of the quantity, but a witness was called by defendant's counsel who swore that he saw the coal in bins, and that he made correct estimates of the several amounts stated, and that at the time when he made such estimates he made correct memoranda as to the quantity estimated. He made in such memoranda correct estimates at the time as near as he could estimate; that he was accustomed to estimate coal, and familiar with that kind of work. In the opinion of the witness the estimates were substantially correct as to the quantity of coal on hand at the different times when they were made. On being further examined by plaintiff's counsel he said his recollection of the amount of coal that was then on the wharf (fourteen or fifteen years before) was guided by the books and the papers; he recollected the coal was there; knew it was; the paper placed it so he could recollect it.

On his redirect he said, after refreshing his recollection by looking at the paper, he could state his estimate of the quantity of coal on Bartlett's wharf in July, 1871, but he could not remember the estimate of all the paper without looking at the paper. At the time he made the memoranda he made it correct, and intended to make it correct, as a correct estimate of the quantity of coal which was there according to his best judgment. After looking at the papers he could remember the estimate he made, so as to state it. The witness was then, under objection and exception by plaintiff's counsel, permitted to answer this question: Now tell us the number of tons on the wharf on the 15th of July, 1871, according to

your best judgment and opinion? and the witness replied 1,886 tons.

Plaintiff's counsel now claims that in the decision of the court there was error. In this we do not concur. The witness was a man familiar with that kind of work, accustomed to estimate coal, who saw the coal, and he swears that he then made an estimate of it; that he intended to make a correct one, and believes he did, and he made at that time a memorandum of such estimate, and which memorandum was a correct one of the estimate.

It seems to me entirely clear, upon principle and authority, that such witness may look at the memorandum and thus refresh his recollection, even though he said he had no recollection whatever of the amount of the estimate outside of the memorandum. The learned counsel says the estimate was not made on oath. That is true. Neither is any other memorandum of a fact, made at the time, made on oath. Suppose he had said he weighed the coal and made a memorandum of it at the time, which was correct when made, but he had no recollection of the amount the coal weighed outside of the memorandum. I understand counsel to admit that the authorities sustain the right of the witness to read from the memorandum, or that it may go in evidence. The distinction I understand him to draw is, that in the one case it is a fact which has been minuted down in the memorandum, and in the other it is an estimate of a fact or quantity, and that no case has gone thus far.

The principle decided in *Halsey* v. *Sinsebaugh* (15 N. Y., 485), warrants the admission of such evidence. An estimate might be made by a person competent to make it. If so, and he does make such estimate, which he swears he means to, and as he believes did make correctly at the time, and the memorandum of which he swears he then made correctly, why should he not be permitted to state what that memorandum was in that case, as much as in the case of a memorandum of fact? There is a difference, of course, in the weight to be attached to the estimate, but only because of the difference between a fact and the estimate of a fact, and if the latter is in itself admissible (which counsel does not deny), then I cannot see why a memorandum of the estimate should not be admissible just as much as the memorandum of the fact. Both estimate and fact are made without any oath at the time, and both come in under

the oath of the witness that the memorandum was correct when made of a fact (or estimate) then happening or made. In this case the witness tells the number of tons by his estimate or opinion, and the fair import of the whole evidence is that he tells it from the memorandum he made at the time. I think the evidence was properly admitted.

The evidence of Mr. King that the interest of defendant White was really his own, and the evidence of the acts and declaration of King after the alleged dissolution, as bearing upon the understanding of each of the three persons in any way interested in the partnership as between themselves, properly came in upon the same principle already alluded to in discussing the admissibility of evidence of the acts and declarations of the witness Nichols, the partner of the defendant White. The case, as it seems to me, was very carefully tried and a verdict rendered upon evidence which was quite conflicting, and there being no errors in the record the judgment should be affirmed, with costs.

BOCKES, P. J., and LANDON, J., concurred.

Judgment and order affirmed, with costs.